UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MCGRAW HILL LLC; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING; CENGAGE LEARNING, INC.; ELSEVIER INC.; and PEARSON EDUCATION, INC.;<br><br>Plaintiffs,<br><br>v.<br><br>RADIUS INTERNATIONAL, INC.,<br><br>Defendant. | Civil Action No. 21-cv-4325<br><br>DISTRICT JUDGE:<br><br>MAGISTRATE JUDGE:<br><br>COMPLAINT FOR:<br><br>Direct and Secondary Copyright Infringement; and<br><br>Direct and Secondary Trademark Infringement/Counterfeiting<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs McGraw Hill LLC ("McGraw Hill"), Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"), Cengage Learning, Inc. ("Cengage"), Elsevier Inc. ("Elsevier"), and Pearson Education, Inc. ("Pearson") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their Complaint against Defendant Radius International, Inc. ("Defendant"). Plaintiffs allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters.

**NATURE OF THE CASE**

1. This is a case brought by educational book publishers against a company that served as a U.S. front for international counterfeiters. Plaintiffs assert violations of federal copyright and trademark laws, arising out of Defendant's large-scale importation and distribution of counterfeit textbooks in the United States. The counterfeits that Defendant distributed are unauthorized reproductions of Plaintiffs' copyrighted textbooks, bearing unauthorized reproductions of

federally registered trademarks that Plaintiffs own or exclusively control.

2. Plaintiffs are five well-known and highly respected educational publishers in the United States. They develop, market, distribute, and sell educational content in many subject areas to students and educators. Plaintiffs' textbooks are among the most popular and widely used in their fields.

3. Defendant describes itself as a global logistics provider specializing in freight forwarding, customs brokerage, and supply chain management. Defendant has several U.S. offices, including offices in Elk Grove Village, Illinois. Defendant has had extensive relationships with international counterfeiters.

4. Defendant participated in and furthered the counterfeiting operations in a multitude of ways. Defendant engaged in importing, exporting, and/or other customs-related activities with the counterfeits. Defendant took possession of the counterfeits shipped to it from abroad, including from Jordan, the United Arab Emirates, and Hong Kong. Defendant warehoused the trove of counterfeits at its Elk Grove Village warehouses and managed the counterfeit inventory. Defendant handled invoicing and/or other order fulfillment transactions involving the counterfeits and then distributed the counterfeits to consumers in the United States. In sum, Defendant served as a key player in the international counterfeiting operations at issue.

5. In addition to the above, in order to conceal the detection of the counterfeits in the marketplace, Defendant intentionally altered counterfeits to make the new counterfeit books look used. Passing off new fake books as used books is a method employed by counterfeiters to sell books at prices lower than new legitimate books in the hopes that such illegal sales go undetected by publishers and others in the legitimate chain of commerce.

6. Plaintiffs bring this action for direct and secondary copyright and trademark

infringement/counterfeiting under the Copyright Act and the Lanham Act, respectively, to seek redress for Defendant's infringing conduct that has caused Plaintiffs significant financial and reputational harm.

## PARTIES

7. Plaintiff McGraw Hill LLC is a Delaware limited liability company with its principal place of business at 1325 Avenue of the Americas, 12th Floor, New York, New York 10019.

8. Plaintiff Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning is a New York limited liability company with its principal place of business at 120 Broadway, New York, New York 10271. Macmillan Learning is wholly owned by Macmillan Holdings, LLC, which is also a New York limited liability company.

9. Cengage Learning Inc., formerly Thomson Learning Inc., is a Delaware corporation, with its principal place of business at 200 Pier Four Boulevard, Boston, Massachusetts 02210.

10. Plaintiff Elsevier Inc. is a Delaware corporation, with its principal place of business at 230 Park Avenue, Suite 800, New York, New York 10169.

11. Plaintiff Pearson Education, Inc. is a Delaware corporation, with its principal place of business at 221 River Street, Hoboken, New Jersey 07030.

12. Defendant Radius International, Inc. is a Massachusetts corporation with its principal place of business at 150 Eastern Avenue, Suite 250, Chelsea, Massachusetts 02150, as well as a location at 38 N. Lively Boulevard, Elk Grove Village, Illinois 60007 (and previously a location at 101 N. Lively Boulevard, Elk Grove Village, Illinois 60007).

## JURISDICTION AND VENUE

13. This is an action arising under the Copyright Act, 17 U.S.C. § 101 *et seq*., and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121.

14. The Court has personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209. Defendant is registered to do business and has offices in Illinois. Defendant committed acts of infringement at and/or through its current and/or former business locations in Elk Grove Village, Illinois and transacted business and made and/or performed contracts within Illinois related to textbooks, including counterfeits of Plaintiffs' textbooks.

15. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendant resides and/or may be found in this District and/or has conducted and transacted business related to counterfeit textbooks in this District, and a substantial part of the acts of infringement complained of herein occurred in this District.

## FACTUAL ALLEGATIONS

### Plaintiffs' Businesses and the Infringed Copyrights and Trademarks

16. Plaintiffs are leading providers of higher education textbooks and tailored learning solutions in the United States. In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and/or learning institutions, providing quality content and assessment material in multiple formats. Plaintiffs' textbooks are widely available in the marketplace and sold throughout the United States through direct channels and via authorized distributors and stores. Plaintiffs' textbooks contain copyright notice pages pursuant to 17 U.S.C. § 401.

17. Plaintiffs publish their works under many trademarks that are well known and

4

highly respected. These trademarks include a variety of marks, imprints, or brands. The trademarks and the goodwill of the business associated with them are of tremendous value and have become associated in the public mind with each Plaintiff's reputation for publishing works of the very highest quality. Plaintiffs and/or their predecessors have invested decades of effort in building a trusted reputation in the publishing industry, which consumers associate with Plaintiffs, their works, and the trademarks under which they publish their works.

18. Plaintiffs are the copyright owners of, and/or the owners of exclusive rights under copyright in, among many others, their respective works or derivative works described on Exhibit A ("Authentic Works"). Plaintiffs or their predecessors or affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering their respective Authentic Works. The Authentic Works described in Exhibit A constitute a non-exhaustive list of Plaintiffs' works that Defendant has infringed, and Plaintiffs anticipate that Exhibit A will be expanded over the course of discovery. Nevertheless, even at this early stage of the proceeding, Exhibit A already lists over 90 separate textbook titles that Defendant has infringed.

19. Plaintiffs are the owners or the exclusive licensees of, among others, the trademarks and/or service marks described as to each Plaintiff on Exhibit B ("Marks"). Plaintiffs or their predecessors or affiliates have duly registered on the Principal Register of the United States Patent and Trademark Office their respective Marks. The Marks are distinctive and arbitrary and may also be incontestable under 15 U.S.C. § 1065. The Marks described in Exhibit B constitute a non-exhaustive list of trademarks that Defendant has infringed, and Plaintiffs anticipate that Exhibit B will be expanded over the course of discovery. Along with the Marks, Plaintiffs publish their works under the valuable and recognizable imprints described in Exhibit C.

20. Plaintiffs have invested significant monies to publish their works. Plaintiffs make

substantial investments, for example, in content creation and in the promotion of their copyrighted works published under their Marks. Plaintiffs would suffer serious financial injury if their copyrights and Marks were not enforced.

21. Counterfeiting activity, such as that complained of herein, displaces sales of Plaintiffs' legitimate textbooks and steals the fruits of Plaintiffs' and their authors' creative efforts and monetary investments. Moreover, the ensuing decline in revenue from counterfeiting could adversely impact the creation of new textbooks, as well as the availability of educational content in many disciplines.

22. Counterfeits of Plaintiffs' textbooks, including those distributed by Defendant, are different from and often inferior to Plaintiffs' legitimate textbooks. Among other differences, the binding, glue, paper, color, printing quality, and/or content may be different and/or inferior. Despite these differences, based on the use of Plaintiffs' Marks, purchasers are likely to believe that the counterfeits of Plaintiffs' textbooks are legitimate. This causes confusion among consumers as to the true source of the textbooks. Plaintiffs' business reputations are further injured by having their Marks and the goodwill associated with them confused or mistakenly associated with textbooks of a lesser quality.

**Defendant's Infringement**

23. Defendant distributed thousands of counterfeits, or more, of Plaintiffs' textbooks to the public. As described above and below, Defendant functioned as the U.S. front for international counterfeiting operations in a multitude of ways.

24. The counterfeits at issue are reproductions of the Authentic Works, bearing identical or substantially indistinguishable reproductions of the Marks. Plaintiffs did not authorize, license, or in any way consent to the manufacture, printing, distribution, or sale of these counterfeit

textbooks, nor did Plaintiffs provide Defendant with any authorization, license, or consent to distribute the counterfeits or use the Marks.

25. Defendant's customer known as "Morena"[1] operates an international counterfeiting ring, which is based in Amman, Jordan. Morena also conducts operations from other overseas locations, including Hong Kong and the United Arab Emirates.

26. Throughout 2018, and until at least late February 2019, Defendant handled many on-the-ground activities for Morena in the United States. Defendant had possession, custody, and control of the counterfeits before distributing them to the public in connection with their sale. For example, at its warehouses, Defendant maintained the inventory of the counterfeits, and Defendant controlled the packing, shipping, and delivery of the counterfeits. Defendant also handled order fulfillment, returns, customs clearance, and other aspects of the counterfeit transactions.

27. Although the counterfeits purported to be new U.S. editions of Plaintiffs' textbooks, written in English, it was obvious that they were not Plaintiffs' legitimate textbooks. For instance, Defendant received many of the counterfeits in bulk shipments from Hong Kong, a location known for counterfeit printing. The counterfeits did not come from Plaintiffs or their authorized printers.

28. Morena provided explicit instructions that its name and "Hong Kong" not be mentioned to purchasers of the counterfeits. Defendant not only concealed Morena's association with the counterfeits, but even sometimes distributed the counterfeits in boxes bearing counterfeit copies of Plaintiffs' trademarks. The use of boxes bearing Plaintiffs' well-known names is another way in which consumers were misled into believing the books were acquired directly from the

---

[1] The term "Morena" as used herein includes the entities and individuals known as Morena for International Trading, Morena Hong Kong Limited, Morena HongKong International Limited, Zeena Books LLC, Mazen Alali, and Lamis Salameh. Morena operates using many names and aliases, and Plaintiffs require discovery to identify all of the names that Morena used in conducting business with Defendant.

7

publishers, which they were not.

29. Further, so as not to call attention to the sale of large quantities of new textbooks at below-market prices, Defendant intentionally altered some of the newly printed counterfeits in order to make them appear used. Defendant would crumple pages, mark up the books, and/or add highlighting, much as a student might. As noted above, this is a method employed by counterfeiters to sell new counterfeits as "used books" in the hopes that the lower prices will enable the illegal sales to go undetected.

30. Morena has operated, and likely continues to operate, multiple storefronts on online marketplaces, such as Amazon.com, on which counterfeits of Plaintiffs' textbooks are sold. Defendant was integrally involved in these storefront operations. Indeed, Defendant's address was the address of record for at least four such online storefronts.

31. Defendant's name and/or address was also listed on importation records for many of the counterfeits at issue. Although the "importer of record" was generally identified as Zeena Books LLC ("Zeena"), Zeena is a sham that was created by Morena. Zeena's only real U.S. presence or functionality existed only through Defendant and its predecessor corporation discussed below. In other words, the actual acts of importation complained of herein were performed by Defendant.

32. The scale of the counterfeiting activity is massive. In March 2019, when Plaintiffs first began to learn of Defendant's involvement with the Morena counterfeiting operations, Plaintiffs conducted an inspection at Defendant's Elk Grove Village warehouses and discovered numerous counterfeits of their textbooks in Defendant's possession. Defendant surrendered the identified counterfeits, as well as other purported copies of Plaintiffs' textbooks that Defendant obtained from Morena. Upon further inspection of these textbooks, Plaintiffs determined that

Defendant had in its possession over 19,500 counterfeits of Plaintiffs' textbooks. While those specific counterfeits were removed from the marketplace, Defendant had already distributed thousands of counterfeits of Plaintiffs' textbooks to purchasers, including book distributors and individual consumers, throughout the United States.

33. In addition to Morena, Defendant was involved with another Jordanian counterfeiter, ABC Books L.L.C. ("ABC Books"), from at least February 2018 to September 2019. ABC Books has engaged in counterfeiting activity with respect to Plaintiffs' textbooks, including through online storefront operations. The registered addresses on at least one of these storefronts, on Amazon.com, are Defendant's Elk Grove Village addresses. Defendant also maintained ABC Books' inventory in the United States and handled their returns from Amazon. Moreover, Defendant imported, exported, and/or otherwise distributed counterfeits from or to ABC Books. And Defendant distributed counterfeits in bulk from Morena to ABC Books. Plaintiffs did not begin to become aware of Defendant's involvement with ABC Books until September 2019.

34. The more counterfeits that Defendant handled and distributed for the international counterfeiters, the more money it got paid, including that Defendant charged certain fees based on the weight and/or volume of the books. Defendant received such payments by various methods, including PayPal, credit card, and foreign bank wire transfer. Unlike how a legitimate business would operate (especially one authorized to deal in textbooks published by five of the biggest educational publishers in the United States), Morena also offered, on multiple occasions, to pay Defendant with cash.

35. Defendant has a predecessor corporation named Middle-East Air Cargo, Inc. ("MEA"). Nancy Abuali, a former owner of MEA, originally established the business relationship with Morena and ABC Books, which Defendant then continued. Ms. Abuali, along with other

9

employees of MEA, worked for Defendant. Discovery is required to fully understand the facts surrounding the transaction between Defendant and MEA.

36. Prior to bringing this lawsuit, Plaintiffs attempted to engage Defendant in a discussion to resolve this dispute. Those discussions failed.

## CLAIMS FOR RELIEF

### Count I - Direct Copyright Infringement

37. Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs 1-36 as though set forth fully herein.

38. Plaintiffs' Authentic Works listed on Exhibit A constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs or their predecessors or affiliates by the United States Copyright Office. At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in such works, which have never been assigned, licensed, or otherwise transferred to Defendant.

39. As described above, Defendant distributed to the consuming public unauthorized copies of the Authentic Works in violation of Plaintiffs' exclusive rights in the Authentic Works as set forth in 17 U.S.C. § 106(3) and 17 U.S.C. § 602(a)(1).

40. The infringement of Plaintiffs' rights in each of their respective copyrighted works constitutes a separate and distinct act of infringement.

41. Defendant's unlawful conduct, as set forth above, was willful. Defendant had knowledge that the textbooks it distributed as set forth above were not legitimate textbooks. Defendant committed the acts complained of herein intentionally, with reckless disregard for Plaintiffs' intellectual property rights, and/or with willful blindness to the infringing nature of its

conduct.

42. As a result of Defendant's unlawful conduct, Defendant financially benefitted, and Plaintiffs have been, and will continue to be, damaged.

43. Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendant from continuing its direct infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Accordingly, Plaintiffs are entitled to injunctive relief restraining Defendant from further infringement.

## Count II - Contributory Copyright Infringement

44. Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs 1-36 as though set forth fully herein.

45. Plaintiffs' Authentic Works listed on Exhibit A constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs or their predecessors or affiliates by the United States Copyright Office. At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in such works.

46. Defendant is liable to Plaintiffs for contributory copyright infringement based on the direct infringement of Plaintiffs' rights in the Authentic Works by the international counterfeiters, as described above.

47. The international counterfeiters did not have any authorization, permission, license, or consent to reproduce, export, import, or distribute counterfeit copies of Plaintiffs' copyrighted textbooks. Notwithstanding, using and relying upon services and facilities provided by Defendant, the international counterfeiters engaged in such infringing activities in violation of Plaintiffs'

exclusive rights under the Copyright Act.

48. Based on the facts alleged above, Defendant had knowledge that the international counterfeiters were committing copyright infringement, including the infringement of Plaintiffs' copyrights in the Authentic Works. Nevertheless, Defendant knowingly enabled and materially contributed to such infringement, including by providing and continuing to provide the services and facilities that enabled the repeated infringements of Plaintiffs' copyrights.

49. As a result of Defendant's unlawful conduct, Defendant financially benefitted, and Plaintiffs have been, and will continue to be, damaged.

50. Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendant from continuing its contributory infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Accordingly, Plaintiffs are entitled to injunctive relief restraining Defendant from further contributory infringement.

### Count III - Vicarious Copyright Infringement

51. Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs 1-36 as though set forth fully herein.

52. Plaintiffs' Authentic Works listed on Exhibit A constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs or their predecessors or affiliates by the United States Copyright Office. At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in such works.

53. Defendant is liable as a vicarious copyright infringer for the direct infringement of Plaintiffs' rights in the Authentic Works by the international counterfeiters, as described above.

54. At all relevant times, Defendant had the legal and practical right and ability to supervise and control the infringing activities that occurred through the use of its services and facilities and had a financial interest in, and derived direct financial benefit from, the international counterfeiters' infringing activities. Among other financial benefits, Defendant was paid by the weight and/or volume of counterfeits, which it then distributed to consumers. Defendant had the means to control and withhold from the international counterfeiters its services and facilitates that enabled the infringement of Plaintiffs' copyrights but failed to do so.

55. As a result of Defendant's unlawful conduct, Plaintiffs have been, and will continue to be, damaged.

56. Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendant from continuing its vicarious infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Accordingly, Plaintiffs are entitled to injunctive relief restraining Defendant from further vicarious infringement.

### Count IV - Direct Trademark Infringement/Counterfeiting

57. Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs 1-36 as though set forth fully herein.

58. At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective Marks listed on Exhibit B, which are valid and protectable trademarks that are registered with the United States Patent and Trademark Office.

59. Defendant infringed Plaintiffs' federally registered Marks through its use in commerce, without Plaintiffs' consent, of a reproduction, counterfeit, copy, or colorable imitation

of each of Plaintiffs' Marks in connection with the sale, offering for sale, and/or distribution of counterfeit textbooks. In particular, Defendant engaged in trademark counterfeiting by distributing counterfeits of the Authentic Works, which bear identical or substantially indistinguishable reproductions of the Marks, in violation of 15 U.S.C. §§ 1114(1)(a) and 1127. Defendant's conduct has caused confusion, mistake, and/or deception, including confusion, mistake, and/or deception among the consuming public as to the origin and nature of the counterfeit textbooks.

60. Defendant's unlawful conduct, as set forth above, was willful. Defendant had knowledge that the textbooks it distributed as described above were not legitimate and that, due to the unauthorized use of copies of Plaintiffs' Marks, consumers would believe that the counterfeits were genuine. Defendant committed the acts complained of herein intentionally, with reckless disregard for Plaintiffs' intellectual property rights, and/or with willful blindness to the infringing nature of its conduct.

61. As a result of Defendant's unlawful conduct as set forth above, Defendant financially benefitted, and Plaintiffs have been, and will continue to be, damaged.

62. Defendant's infringement and counterfeiting of Plaintiffs' Marks, as described above, has caused and will continue to cause irreparable injury to Plaintiffs, including to their reputations for quality and to the goodwill of the Marks, for which Plaintiffs have no adequate remedy at law. Unless this Court restrains Defendant from continuing its direct infringement and counterfeiting of Plaintiffs' trademarks, these injuries will continue to occur in the future. Accordingly, Plaintiffs are entitled to injunctive relief restraining Defendant from further infringement.

**Count V - Contributory Trademark Infringement/Counterfeiting**

63. Plaintiffs re-allege and incorporate by reference the allegations contained in the

foregoing paragraphs 1-36 as though set forth fully herein.

64. At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective Marks listed on Exhibit B, which are valid and protectable trademarks that are registered with the United States Patent and Trademark Office.

65. Defendant is liable to Plaintiffs for contributory trademark infringement based on the direct infringement and counterfeiting of their Marks by the international counterfeiters, as described above.

66. The international counterfeiters did not have any authorization, permission, license, or consent to reproduce, use in commerce, or otherwise exploit any of Plaintiffs' trademarks. Notwithstanding, using and relying upon services and facilities provided by Defendant, the international counterfeiters infringed and counterfeited Plaintiffs' trademarks in violation of 15 U.S.C. §§ 1114(1)(a) and 1127, including in connection with the sale, offering for sale, and/or distribution of counterfeit copies of Plaintiffs' textbooks, bearing spurious and identical or substantially indistinguishable copies of Plaintiffs' Marks.

67. Based on the facts alleged above, Defendant had knowledge that the international counterfeiters were committing trademark infringement and counterfeiting, including the infringement and counterfeiting of Plaintiffs' Marks. Nevertheless, Defendant knowingly enabled and materially contributed to such infringement and counterfeiting, including by providing and continuing to provide the services and facilities that enabled the repeated infringement and counterfeiting of Plaintiffs' trademarks.

68. As a result of Defendant's unlawful conduct, Defendant financially benefitted, and Plaintiffs have been, and will continue to be, damaged.

69. Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendant from continuing its contributory infringement and counterfeiting of Plaintiffs' trademarks, these injuries will continue to occur in the future. Accordingly, Plaintiffs are entitled to injunctive relief restraining Defendant from further contributory infringement and counterfeiting.

### Count VI - Vicarious Trademark Infringement/Counterfeiting

70. Plaintiffs re-allege and incorporate by reference the allegations contained in the foregoing paragraphs 1-36 as though set forth fully herein.

71. At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective Marks listed on Exhibit B, which are valid and protectable trademarks that are registered with the United States Patent and Trademark Office.

72. Defendant is liable as a vicarious trademark infringer based on the direct infringement and counterfeiting of the Marks by the international counterfeiters, as described above.

73. The international counterfeiters did not have any authorization, permission, license, or consent to reproduce, use in commerce, or otherwise exploit any of Plaintiffs' trademarks. Notwithstanding, using and relying upon services and facilities provided by Defendant, the international counterfeiters infringed and counterfeited Plaintiffs' trademarks in violation of 15 U.S.C. §§ 1114(1)(a) and 1127, including in connection with the sale, offering for sale, and/or distribution of counterfeit copies of Plaintiffs' textbooks, bearing spurious and identical or substantially indistinguishable copies of Plaintiffs' Marks.

74. Defendant and the international counterfeiters jointly exercised control over the counterfeit textbooks at issue. For example, for Defendant's role, Defendant imported the counterfeits and/or received them upon their entry into the United States, managed the counterfeit inventory at its warehouses in Illinois, and was responsible for compiling and preparing the counterfeit inventory for shipment and distributing it to the public. Defendant had the means to withhold from the international counterfeiters its services and facilitates that enabled the infringement and counterfeiting of Plaintiffs' trademarks but failed to do so.

75. Defendant had a financial interest in, and derived direct financial benefit from, the international counterfeiters' infringing activities. As described above, the more counterfeits that Defendant handled and distributed, the more it got paid.

76. As a result of Defendant's unlawful conduct, Plaintiffs have been, and will continue to be, damaged.

77. Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendant from continuing its vicarious infringement and counterfeiting of Plaintiffs' trademarks, these injuries will continue to occur in the future. Accordingly, Plaintiffs are entitled to injunctive relief restraining Defendant from further vicarious trademark infringement and counterfeiting.

**PRAYER FOR RELIEF**

By reason of the facts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1. Judgment in Plaintiffs' favor on the claims asserted herein.

2. A finding that Defendant's infringement of Plaintiffs' Authentic Works and

Plaintiffs' Marks identified on Exhibits A and B, respectively, and as they may be amended, was intentional and willful.

3. An order enjoining Defendant and other appropriate persons or entities under 17 U.S.C. § 502, 15 U.S.C. § 1116, and Federal Rule of Civil Procedure 65(d) from further infringing and facilitating infringement upon Plaintiffs' respective copyrights and trademarks;

4. An order requiring Defendant to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendant's infringement of Plaintiffs' copyrights, as alleged above, including Plaintiffs' actual damages and Defendant's profits, or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5. An order requiring Defendant to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendant's infringement and counterfeiting of Plaintiffs' trademarks, as alleged above, including treble damages for use of a counterfeit mark (i.e., three times Plaintiffs' actual damages or Defendant's profits, whichever is greater), or statutory damages, at Plaintiffs' election, pursuant to 15 U.S.C. § 1117;

6. An order requiring Defendant to deliver up all counterfeit copies of Plaintiffs' textbooks, and related labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing Plaintiffs' registered trademarks, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

7. Prejudgment and post-judgment interest at the applicable rate;

8. Plaintiffs' attorneys' fees, expenses, and costs of suit; and

9. Such other and further relief the Court deems proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby request a trial by jury.

DATED: August 13, 2021

Respectfully submitted,

/s/ Matthew J. Oppenheim
Matthew J. Oppenheim (443698)
Michele H. Murphy (445419)

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202-480-2999 telephone
866-766-1678 fax
matt@oandzlaw.com
michele@oandzlaw.com

Floyd A. Mandell (1747681)
Jeffrey A. Wakolbinger (6297872)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, Illinois 60661
312-902-5200 telephone
312-901-1061 fax
floyd.mandell@kattenlaw.com
jeff.wakolbinger@kattenlaw.com

*Attorneys for Plaintiffs*